UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| JP MORGAN CHASE BANK, N.A., | Case No. 2:16-CV-1677 JCM (GWF) |
| Plaintiff(s), | ORDER |
| v. | |
| SFR INVESTMENTS POOL 1, LLC, | |
| Defendant(s). | |

Presently before the court is defendant/counter claimant SFR Investments Pool 1, LLC's ("SFR") motion for summary judgment. (ECF No. 48). Plaintiff/counter defendant JPMorgan Chase Bank, N.A. ("JPMorgan") responded (ECF No. 50), to which SFR replied (ECF No. 53).

Also before the court is JPMorgan's motion for summary judgment. (ECF No. 49). SFR responded (ECF No. 51), to which JPMorgan replied (ECF No. 52).

**I.  Facts**

This case involves a dispute over real property located at 9875 Maspalomas Street, Las Vegas, NV 89178 (the "property"). On April 22, 2008, a deed of trust listing Gordon S. Adam (the "borrower") as the borrower and First Horizon Home Loans (the "lender" or "First Horizon") as the lender was recorded. (ECF No. 48). The deed of trust granted the lender a security interest in the property to secure repayment of the loan. *Id.*

On August 1, 2011, Absolute Collection Services, LLC ("Absolute"), as agent of Viva Valencia/Viva Venture Homeowner's Association (the "HOA"), recorded a notice of delinquent assessment against the property. (ECF No. 49). On October 21, 2011, Absolute, on behalf of the HOA, recorded a notice of default and election to sell under homeowner's association lien against

the property. *Id.* Absolute mailed the notice to all interested parties, including the lender. (ECF No. 48).

Absolute then recorded a notice of foreclosure sale on February 24, 2012 and mailed the notice to all interested parties, including the lender. (ECF No. 48). JPMorgan received notice of the sale and executed the certified mail receipt. *Id.* The notice of sale was also published in the Nevada Legal News for three consecutive weeks. *Id.*

On July 17, 2012, pursuant to the notice of trustee's sale, a non-judicial foreclosure sale occurred, whereby SFR acquired interest in the property for $7,500.00. (ECF No. 48). There were multiple bidders at the sale. *Id.*

On July 19, 2012, a trustee's deed upon sale was recorded against the property vesting title in SFR. (ECF No. 48). SFR has remained as the owner of record since that date. On October 30, 2012, a corporate assignment of deed of trust was recorded assigning JPMorgan as the beneficiary under the deed of trust. (ECF No. 49).

On July 15, 2016, JPMorgan filed the underlying complaint, asserting claims for quiet title and declaratory relief against SFR. (ECF No. 1). JPMorgan alleges the deed of trust was not extinguished at the foreclosure sale and/or that SFR took subject to the deed of trust. (ECF No. 1).

On November 29, 2016, SFR filed its answer and counterclaim for declaratory relief/quiet title and injunctive relief against JPMorgan and the borrower. (ECF No. 20). The borrower was defaulted by clerk's order on August 2, 2017. (ECF No. 46).

In the instant motion, SFR moves for summary judgment against JPMorgan on its claims for quiet title and permanent injunction. (ECF No. 48). Specifically, SFR argues title should be quieted in its favor, the deed of trust held by JPMorgan should be expunged from the title, and JPMorgan and the borrower should be permanently enjoined from any sale or transfer that would affect SFR's title in the property. (ECF No. 48). JPMorgan also moves for summary judgment against SFR as to its claims for quiet title and declaratory relief. (ECF No. 49).

. . .

. . .

## II. Legal Standard

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

For purposes of summary judgment, disputed factual issues should be construed in favor of the non-moving party. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990). However, to be entitled to a denial of summary judgment, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." *Id.*

In determining summary judgment, a court applies a burden-shifting analysis. The moving party must first satisfy its initial burden. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

By contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the non-moving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith*

*Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

**III. Discussion**

    **A. Quiet Title[1]**

In SFR's motion, it contends that summary judgment in its favor is proper because, *inter alia*, the foreclosure sale extinguished JPMorgan's deed of trust pursuant to NRS 116.3116 and *SFR Investments*. (ECF No. 48). SFR further contends that the foreclosure sale should not be set aside because the price paid at the foreclosure sale was commercially reasonable, JPMorgan has not shown fraud, unfairness, or oppression as outlined in *Shadow Wood Homeowners Assoc. v. N.Y. Cmty. Bancorp., Inc.*, 366 P.3d 1105 (Nev. 2016) ("*Shadow Wood*"), JPMorgan failed to tender the super-priority portion of the lien, and because there was no due process violation. (ECF No. 48). The court agrees.

---

[1] The 2015 Legislature revised Chapter 116 substantially. 2015 Nev. Stat., ch. 266. Except where otherwise indicated, the references in this order to statutes codified in NRS Chapter 116 are to the version of the statutes in effect in 2011–13, when the events giving rise to this litigation occurred.

Conversely, JPMorgan argues summary judgment should be granted in its favor because NRS 116's opt-in notice scheme was ruled facially unconstitutional by *Bourne Valley Court Trust v. Wells Fargo Bank, N.A.*, 832 F.3d 1154 (9th Cir. 2016) and because the Nevada Supreme Court's decision in *SFR Investments Pool 1, LLC v. U.S. Bank, N.A.*, 130 Nev. Adv. Op. 75, 334 P.3d 408 (Nev. 2014) is not retroactive to HOA sales conducted before the court's decision. (ECF No. 49).

Under Nevada law, "[a]n action may be brought by any person against another who claims an estate or interest in real property, adverse to the person bringing the action for the purpose of determining such adverse claim." Nev. Rev. Stat. § 40.010. "A plea to quiet title does not require any particular elements, but each party must plead and prove his or her own claim to the property in question and a plaintiff's right to relief therefore depends on superiority of title." *Chapman v. Deutsche Bank Nat'l Trust Co.*, 302 P.3d 1103, 1106 (Nev. 2013) (internal quotation marks and citations omitted). Therefore, for plaintiff to succeed on its quiet title action, it needs to show that its claim to the property is superior to all others. *See also Breliant v. Preferred Equities Corp.*, 918 P.2d 314, 318 (Nev. 1996) ("In a quiet title action, the burden of proof rests with the plaintiff to prove good title in himself.").

Section 116.3116(1) of the NRS gives an HOA a lien on its homeowners' residences for unpaid assessments and fines. Nev. Rev. Stat. § 116.3116(1). Moreover, NRS 116.3116(2) gives priority to that HOA lien over all other liens and encumbrances with limited exceptions—such as "[a] first security interest on the unit recorded before the date on which the assessment sought to be enforced became delinquent." Nev. Rev. Stat. § 116.3116(2)(b).

The statute then carves out a partial exception to subparagraph (2)(b)'s exception for first security interests. *See* Nev. Rev. Stat. § 116.3116(2). In *SFR Investments Pool 1 v. U.S. Bank*, the Nevada Supreme Court provided the following explanation:

> As to first deeds of trust, NRS 116.3116(2) thus splits an HOA lien into two pieces, a superpriority piece and a subpriority piece. The superpriority piece, consisting of the last nine months of unpaid HOA dues and maintenance and nuisance-abatement charges, is "prior to" a first deed of trust. The subpriority piece, consisting of all other HOA fees or assessments, is subordinate to a first deed of trust.

334 P.3d 408, 411 (Nev. 2014) ("*SFR Investments*").

Chapter 116 of the Nevada Revised Statutes permits an HOA to enforce its superpriority lien by nonjudicial foreclosure sale. *Id*. at 415. Thus, "NRS 116.3116(2) provides an HOA a true superpriority lien, proper foreclosure of which will extinguish a first deed of trust." *Id.* at 419; *see also* Nev. Rev. Stat. § 116.31162(1) (providing that "the association may foreclose its lien by sale" upon compliance with the statutory notice and timing rules).

The holder of a first deed of trust may pay off the superpriority interest to keep its interest from being extinguished upon foreclosure of an HOA superpriority lien. *See SFR Investments*, 334 P.3d at 414 ("But as a junior lienholder, U.S. Bank could have paid off the SHHOA lien to avert loss of its security . . . ."); *see also 7912 Limbwood Ct. Trust v. Wells Fargo Bank, N.A., et al.*, 979 F. Supp. 2d 1142, 1149 (D. Nev. 2013) ("If junior lienholders want to avoid this result, they readily can preserve their security interests by buying out the senior lienholder's interest." (citing *Carillo v. Valley Bank of Nev.*, 734 P.2d 724, 725 (Nev. 1987); *Keever v. Nicholas Beers Co.*, 611 P.2d 1079, 1083 (Nev. 1980))).

Subsection (1) of NRS 116.31166 provides that the recitals in a deed made pursuant to NRS 116.31164 of the following are conclusive proof of the matters recited:

> (a) Default, the mailing of the notice of delinquent assessment, and the recording of the notice of default and election to sell;
> (b) The elapsing of the 90 days; and
> (c) The giving of notice of sale[.]

Nev. Rev. Stat. § 116.31166(1)(a)–(c).[2] "The 'conclusive' recitals concern default, notice, and publication of the [notice of sale], all statutory prerequisites to a valid HOA lien foreclosure sale as stated in NRS 116.31162 through NRS 116.31164, the sections that immediately precede and give context to NRS 116.31166." *Shadow Wood Homeowners Assoc. v. N.Y. Cmty. Bancorp., Inc.*,

---

[2] The statute further provides as follows:

> 2. Such a deed containing those recitals is conclusive against the unit's former owner, his or her heirs and assigns, and all other persons. The receipt for the purchase money contained in such a deed is sufficient to discharge the purchaser from obligation to see to the proper application of the purchase money.
>
> 3. The sale of a unit pursuant to NRS 116.31162, 116.31163 and 116.31164 vests in the purchaser the title of the unit's owner without equity or right of redemption.

Nev. Rev. Stat. § 116.31166(2)–(3).

366 P.3d 1105 (Nev. 2016) ("*Shadow Wood*"). Nevertheless, courts retain the equitable authority to consider quiet title actions when a HOA's foreclosure deed contains statutorily conclusive recitals. *See id.* at 1112.

Pursuant to *SFR Investments*, NRS 116.3116, and the recorded foreclosure deed, the validly conducted foreclosure sale extinguished JPMorgan's deed of trust. Nevertheless, despite SFR's contentions, this court retains the equitable authority to consider quiet title actions when a HOA's foreclosure deed contains statutorily conclusive recitals. *See id.* at 1112. "When sitting in equity . . . courts must consider the entirety of the circumstances that bear upon the equities. This includes considering the status and actions of all parties involved, including whether an innocent party may be harmed by granting the desired relief." *Id*.

Based on the allegations set forth in the complaint, the court finds that JPMorgan has failed to sufficiently state a quiet title claim. JPMorgan alleges that NRS 116 is facially unconstitutional and thus did not extinguish its deed of trust. This allegation, however, is insufficient in light of the recorded trustee's deed upon sale in favor of SFR and the actual notice provided to JPMorgan. (ECF No. 48).

In light of the foregoing, JPMorgan has failed to sufficiently state a quiet title claim against SFR. Based on the facts set forth in JPMorgan's complaint, the foreclosure sale extinguished the deed of trust. Thus, JPMorgan has failed to allege that its interest in the property is superior to that of SFR's interest. Accordingly, SFR's motion for summary judgment as to quiet title claim will be granted.

**B. Constitutionality of NRS 116**

JPMorgan contends that *Bourne Valley* renders any factual issues concerning actual notice as irrelevant. (ECF No. 49). JPMorgan thus maintains that it need only "show that the foreclosure and extinguishment of JPMorgan's rights occurred pursuant to NRS 116." (ECF No. 49).

JPMorgan has failed to show that *Bourne Valley* is applicable to its case. Despite JPMorgan's erroneous interpretation to the contrary, *Bourne Valley* did not hold that the entire foreclosure statute was facially unconstitutional. At issue in *Bourne Valley* was the constitutionality of the "opt-in" provision of NRS Chapter 116, not the statute in its entirety.

Specifically, the Ninth Circuit held that NRS 116.3116's "opt-in" notice scheme, which required a HOA to alert a mortgage lender that it intended to foreclose only if the lender had affirmatively requested notice, facially violated mortgage lenders' constitutional due process rights. *Bourne Valley*, 832 F.3d at 1157–58.

As identified in *Bourne Valley*, NRS 116.31163(2)'s "opt-in" provision unconstitutionally shifted the notice burden to holders of the property interest at risk—not NRS Chapter 116 in general. *See id.* at 1158. At issue is the "opt-in" provision that unconstitutionally shifts the notice burden to holders of the property interest at risk. *See id.*

"A first deed of trust holder only has a constitutional grievance if he in fact did not receive reasonable notice of the sale at which his property rights was extinguished." *Wells Fargo Bank, N.A. v. Sky Vista Homeowners Ass'n*, No. 315CV00390RCJVPC, 2017 WL 1364583, at *4 (D. Nev. Apr. 13, 2017). To state a procedural due process claim, a claimant must allege "(1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections." *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998). JPMorgan has failed on both prongs.

Here, JPMorgan has failed to show that it did not receive proper notice. JPMorgan received a notice of default and election to sell, as well as a notice of sale from the HOA. In fact, JPMorgan executed the certified mail receipt. (ECF No. 48, Ex. A-8). Therefore, JPMorgan's due process argument fails as a matter of law. *See, e.g.*, *Spears v. Spears*, 596 P.2d 210, 212 (Nev. 1979) ("The rule is well established that one who is not prejudiced by the operation of a statute cannot question its validity.").

Further, JPMorgan confuses constitutionally mandated notice with the notices required to conduct a valid foreclosure sale. Due process does not require actual notice. *Jones v. Flowers*, 547 U.S. 220, 226 (2006). Rather, it requires notice "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *see also Bourne Valley*, 832 F.3d at 1158. Accordingly, JMorgan's summary judgment motion as to quiet title and declaratory relief will be denied.

### C. Tender Offer

JPMorgan makes no argument it tendered any amount of money to the HOA to pay the super-priority portion of the lien in advance of the foreclosure sale.

Under NRS 116.31166(1), the holder of a first deed of trust may pay off the super-priority portion of an HOA lien to prevent the foreclosure sale from extinguishing that security interest. *See* Nev. Rev. Stat. § 116.31166(1); *see also SFR Investments*, 334 P.3d at 414 ("But as a junior lienholder, U.S. Bank could have paid off the SHHOA lien to avert loss of its security . . . ."); *see also, e.g.*, *7912 Limbwood Ct. Trust v. Wells Fargo Bank, N.A., et al.*, 979 F. Supp. 2d 1142, 1149 (D. Nev. 2013) ("If junior lienholders want to avoid this result, they readily can preserve their security interests by buying out the senior lienholder's interest." (citing *Carillo v. Valley Bank of Nev.*, 734 P.2d 724, 725 (Nev. 1987); *Keever v. Nicholas Beers Co.*, 611 P.2d 1079, 1083 (Nev. 1980))).

The notice of default recorded on October 11, 2011, set forth an amount due. (ECF No. 48, Ex. A-6). Had JPMorgan paid the amount set forth in the notice of default, the HOA's interest would have been subordinate to the first deed of trust. *See* Nev. Rev. Stat. § 116.31166(1). JPMorgan's failure to do so further supports granting summary judgment in SFR.

After failing to use the legal remedies available to JPMorgan to prevent the property from being sold to a third party—for example, seeking a temporary restraining order and preliminary injunction and filling a *lis pendens* on the property (*see* Nev. Rev. Stat. §§ 14.010, 40.060)—JPMorgan now seeks to profit from its own failure to follow the rules set forth in the statutes. *See generally, e.g.*, *Barkley's Appeal. Bentley's Estate*, 2 Monag. 274, 277 (Pa. 1888) ("In the case before us, we can see no way of giving the petitioner the equitable relief she asks without doing great injustice to other innocent parties who would not have been in a position to be injured by such a decree as she asks if she had applied for relief at an earlier day."); *Nussbaumer v. Superior Court in & for Yuma Cty.*, 489 P.2d 843, 846 (Ariz. 1971) ("Where the complaining party has access to all the facts surrounding the questioned transaction and merely makes a mistake as to the legal consequences of his act, equity should normally not interfere, especially where the rights of third parties might be prejudiced thereby.").

Accordingly, the deed of trust does not still encumber the property as JPMorgan failed to tender the amount due prior to the foreclosure sale.

**D. Commercial Reasonability**

SFR argues that the foreclosure sale was commercially reasonable because the sale price ($7,500.00) was not grossly inadequate given the conditions under which the property was sold and because JPMorgan has not presented any evidence of fraud, unfairness, or oppression. (ECF No. 48).

JPMorgan argues that the court should grant its motion because the grossly inadequate foreclosure sale price for approximately 4.2% of the property's fair market value ($177,000.00) is grounds alone to set aside the sale. (ECF No. 50). Further, JPMorgan argues the sale involved fraud, unfairness, or oppression. *Id.* However, JPMorgan overlooks the reality of the foreclosure process. The amount of the lien—not the fair market value of the property—is what typically sets the sales price.

JPMorgan argues that the *Shadow Wood* court adopted the restatement approach, quoting the opinion as holding that "[w]hile gross inadequacy cannot be precisely defined in terms of a specific percentage of fair market value, generally a court is warranted in invalidating a sale where the price is less than 20 percent of fair market value." (ECF No. 50) (emphasis omitted).

NRS 116.3116 codifies the Uniform Common Interest Ownership Act ("UCIOA") in Nevada. *See* Nev. Rev. Stat. § 116.001 ("This chapter may be cited as the Uniform Common-Interest Ownership Act"); *see also SFR Investments*, 334 P.3d at 410. Numerous courts have interpreted the UCIOA and NRS 116.3116 as imposing a commercial reasonableness standard on foreclosure of association liens.[3]

---

[3] *See, e.g.*, *Bayview Loan Servicing, LLC v. Alessi & Koenig, LLC*, 962 F. Supp. 2d 1222, 1229 (D. Nev. 2013) ("[T]he sale for $10,000 of a Property that was worth $176,000 in 2004, and which was probably worth somewhat more than half as much when sold at the foreclosure sale, raises serious doubts as to commercial reasonableness."); *SFR Investments*, 334 P.3d at 418 n.6 (noting bank's argument that purchase at association foreclosure sale was not commercially reasonable); *Thunder Props., Inc. v. Wood*, No. 3:14-cv-00068-RCJ-WGC, 2014 WL 6608836, at *2 (D. Nev. Nov. 19, 2014) (concluding that purchase price of "less than 2% of the amounts of the deed of trust" established commercial unreasonableness "almost conclusively"); *Rainbow Bend Homeowners Ass'n v. Wilder*, No. 3:13-cv-00007-RCJ-VPC, 2014 WL 132439, at *2 (D. Nev. Jan. 10, 2014) (deciding case on other grounds but noting that "the purchase of a residential property free and clear of all encumbrances for the price of delinquent HOA dues would raise grave doubts as to the commercial reasonableness of the sale under Nevada law"); *Will v. Mill*

In *Shadow Wood*, the Nevada Supreme Court held that an HOA's foreclosure sale may be set aside under a court's equitable powers notwithstanding any recitals on the foreclosure deed where there is a "grossly inadequate" sales price and "fraud, unfairness, or oppression." 366 P.3d at 1110; *see also Nationstar Mortg., LLC v. SFR Invs. Pool 1, LLC*, 184 F. Supp. 3d 853, 857–58 (D. Nev. 2016). In other words, "demonstrating that an association sold a property at its foreclosure sale for an inadequate price is not enough to set aside that sale; there must also be a showing of fraud, unfairness, or oppression." *Id*. at 1112; *see also Long v. Towne*, 639 P.2d 528, 530 (Nev. 1982) ("Mere inadequacy of price is not sufficient to justify setting aside a foreclosure sale, absent a showing of fraud, unfairness or oppression." (citing *Golden v. Tomiyasu*, 387 P.2d 989, 995 (Nev. 1963) (stating that, while a power-of-sale foreclosure may not be set aside for mere inadequacy of price, it may be if the price is grossly inadequate and there is "in addition proof of some element of fraud, unfairness, or oppression as accounts for and brings about the inadequacy of price" (internal quotation omitted)))).

Despite JPMorgan's assertion to the contrary, the *Shadow Wood* court did not adopt the restatement. In fact, nothing in *Shadow Wood* suggests that the Nevada Supreme Court's adopted, or had the intention to adopt, the restatement. *Compare Shadow Wood*, 366 P.3d at 1112–13 (citing the restatement as secondary authority to warrant use of the 20% threshold test for grossly inadequate sales price), *with St. James Village, Inc. v. Cunningham*, 210 P.3d 190, 213 (Nev. 2009) (explicitly adopting § 4.8 of the Restatement in specific circumstances); *Foster v. Costco Wholesale Corp.*, 291 P.3d 150, 153 (Nev. 2012) ("[W]e adopt the rule set forth in the Restatement (Third) of Torts: Physical and Emotional Harm section 51."); *Cucinotta v. Deloitte & Touche, LLP*, 302 P.3d 1099, 1102 (Nev. 2013) (affirmatively adopting the Restatement (Second) of Torts section 592A). Because Nevada courts have not adopted the relevant section(s) of the restatement at issue here, the *Long* test, which requires a showing of fraud, unfairness, or oppression in addition to a grossly inadequate sale price to set aside a foreclosure sale, controls. *See* 639 P.2d at 530.

Nevada has not clearly defined what constitutes "unfairness" in determining commercial reasonableness. The few Nevada cases that have discussed commercial reasonableness state,

*Condo. Owners' Ass'n*, 848 A.2d 336, 340 (Vt. 2004) (discussing commercial reasonableness standard and concluding that "the UCIOA does provide for this additional layer of protection").

"every aspect of the disposition, including the method, manner, time, place, and terms, must be commercially reasonable." *Levers v. Rio King Land & Inv. Co.*, 560 P.2d 917, 920 (Nev. 1977). This includes "quality of the publicity, the price obtained at the auction, [and] the number of bidders in attendance." *Dennison v. Allen Grp. Leasing Corp.*, 871 P.2d 288, 291 (Nev. 1994) (citing *Savage Constr. v. Challenge–Cook*, 714 P.2d 573, 574 (Nev. 1986)).

Nevertheless, JPMorgan fails to set forth sufficient evidence to show fraud, unfairness, or oppression so as to justify setting aside the foreclosure sale. JPMorgan merely concludes the HOA and SFR must have colluded because SFR paid the exact price of the HOA lien at the foreclosure sale. Such conclusory statements absent supporting evidence are insufficient to show the sale was subject to fraud, unfairness, or oppression.

As noted by SFR, the foreclosure sale "was publicly noticed, as required by statute; multiple bidders attended the auction; and it is undisputed that neither the homeowner nor [JPMorgan] paid an amount necessary to cure the lien before the sale. Furthermore, the [HOA's] compliance with notice is not in question." (ECF No. 48 at 22).

Accordingly, JPMorgan's commercial reasonability argument fails as a matter of law, as it failed to set forth evidence of fraud, unfairness, or oppression. *See, e.g.*, *Nationstar Mortg., LLC v. SFR Investments Pool 1, LLC*, No. 70653, 2017 WL 1423938, at *2 n.2 (Nev. App. Apr. 17, 2017) ("Sale price alone, however, is never enough to demonstrate that the sale was commercially unreasonable; rather, the party challenging the sale must also make a showing of fraud, unfairness, or oppression that brought about the low sale price.").

### E. Bona Fide Purchaser Status

Because the court has concluded that JPMorgan failed to properly raise any equitable challenges to the foreclosure sale, the court need not address SFR's purported status as a bona fide purchaser for value. *See, e.g.*, *Nationstar Mortg., LLC v. SFR Investments Pool 1, LLC*, No. 70653, 2017 WL 1423938, at *3 n.3 (Nev. App. Apr. 17, 2017) (citing *Shadow Wood,* 366 P.3d at 1114).

### F. Return Doctrine

SFR's motion for summary judgment urges the court to apply the "return doctrine," which would purportedly return NRS 116.31163, 116.311635, and 116.31168 to their 1991 pre-

amendment state because *Bourne Valley* struck those provisions as unconstitutional. (ECF No. 48). However, the court need not address this issue because there was actual notice to the party who possessed a relevant deed of trust in the property at the time of the foreclosure process. That fact renders *Bourne Valley* irrelevant to the case at hand. *See generally Bourne Valley* 832 F.3d at 1159.

Therefore, to issue an opinion at this time on this issue would produce an advisory opinion, which this court cannot do. *Golden v. Zwickler*, 394 U.S. 103, 108 (1969) (holding that "[t]he federal courts established pursuant to Article III of the Constitution do not render advisory opinions.").

## IV. Conclusion

In light of the foregoing, the court will grant SFR's motion for summary judgment on its claims for quiet title/declaratory relief and permanent injunction. (ECF No. 48).

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that SFR's motion for summary judgment (ECF No. 48) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that JPMorgan's motion for summary judgment (ECF No. 49) be, and the same hereby is, DENIED.

The clerk is instructed to enter judgment accordingly and close the case.

DATED February 21, 2018.

_____
UNITED STATES DISTRICT JUDGE